Miles M. Cooley, Esq. (SBN: 206783)
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045
Email: mcooley@ftllp.com

Attorneys for Plaintiffs Jasmine Dumile Thompson and Gas Drawls, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JASMINE THOMPSON, an individual, and GAS DRAWLS, LLC, a Georgia limited liability company,

     Plaintiffs,

     vs.

EOTHEN "EGON" ALAPATT, an individual, and DOES 1-50

     Defendants.

Case No.

**COMPLAINT FOR:**

1. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501 et. seq.);**

2. **FRAUD/INTENTIONAL MISREPRESENTATION;**

3. **CONVERSION;**

4. **UNJUST ENRICHMENT;**

5. **CONSTRUCTIVE TRUST; and**

6. **DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

---

**COMPLAINT**

Plaintiffs Jasmine Dumile Thompson ("Thompson") and Gas Drawls, LLC ("Gas Drawls") (collectively "Plaintiffs"), by and through their counsel, complain against Eothen "Egon" Alapatt and DOES 1-50 (collectively "Defendants"), hereby alleging as follows:

## I.

## INTRODUCTION

1.     This is a dispute about the cynical deception and outright thievery of renowned hip-hop artist MF DOOM's intellectual and personal property by Eothen "Egon" Alapatt ("Alapatt"), a veteran music industry player and owner of Now Again Records, who has long track record of exploiting, betraying and violating the rights of artists he pretends to partner with, support and uplift. Indeed, Alapatt is currently in disputes with legendary producer Madlib, beneficiaries of hip-hop titan J Dilla's estate, and presently, the now-deceased MF DOOM's beneficiaries, successors in interest and assignees, Plaintiffs, who are collectively: MF DOOM's widow, Thompson, and the entity that owns and/or controls the creative business ventures of MF DOOM and that owns certain intellectual property rights related thereto, Gas Drawls.

2.     At the heart of the dispute is the creative, lyrical and performative genius of Dumile Daniel Thompson, a prolific British-American rapper, recording artist and producer most notably known as MF DOOM ("DOOM") although he performed under various aliases, such as Viktor Vaughn and King Geedorah. DOOM was known for performing wearing his hallmark metal mask. Over his nearly 20-year career, DOOM created or co-created some of the most seminal and critically-acclaimed recordings in the hip-hop genre, such as *Madvillainy*, *Operation Doomsday* and *MM..FOOD*.  After DOOM's death in 2020, *Variety* described DOOM as one of hip-hop's "most celebrated, unpredictable and enigmatic figures."  It is widely believed that DOOM is one of the most influential and talented figures in hip-hop history. As Q-Tip of A Tribe Called Quest once

said, DOOM "is your favorite rapper's favorite rapper."



3.     Over his prolific career, DOOM kept paper "rhyme books": physical notebooks containing hand-written lyrics, rhymes, musings and other creative ideations, the purest form of intellectual property there is for an artist ("the Notebooks").  The Notebooks contain the original lyrics to many of DOOM's recordings, as well as lyrics to unreleased songs and song ideas. The contents of the Notebooks constituted DOOM's confidential, creative work product and intellectual property and were intended by DOOM to be secret and confidential.

4.     By 2010, DOOM's Notebooks had grown to 31 book volumes. DOOM stored the volumes of Notebooks in his studio in Los Angeles, which was

ostensibly a secure location that served DOOM's objective of keeping the Notebooks secure, confidential and out of anyone else's hands.

5.     In or about late 2010, DOOM travelled to the United Kingdom to perform a show, and due to immigration issues, could not return to the United States.  DOOM ended up settling in the United Kingdom.  At some point in 2016, while DOOM was resident in the United Kingdom, Alapatt took unlawful possession of the Notebooks from DOOM's Los Angeles studio.

6.     Alapatt never consulted with DOOM about his acquisition of the Notebooks and took advantage of DOOM's being out of the country to obtain them.  Later, when first confronted about Notebooks, Alapatt lied about having them. Then, when it was clear they were actually in his possession, Alapatt effectively told DOOM a story about paying DOOM's landlord "back rent" to acquire them and save them from destruction, then he delayed, obfuscated and deflected when DOOM asked for the Notebooks back, and ultimately, after myriad rationalizations and excuses, he refused to return the Notebooks to DOOM, and now, after DOOM's death, refuses to return them to Plaintiffs, the owners/assigns/licensees of both the physical copies of and copyrights contained in the Notebooks.

7.     At some point after taking possession of the Notebooks, unbeknownst to DOOM and Plaintiffs, Alapatt made unauthorized large format copies of the Notebooks, in violation of DOOM's intellectual property rights. Plaintiff is informed, believes and upon these bases alleges that Alapatt has, in fact, distributed or otherwise shared the copies he made of the Notebooks with third parties.

8.     Moreover, in 2023, Plaintiffs discovered that the story Alapatt has been using to justify his possession of the Notebooks was a lie: a third-party witness with personal knowledge of the events at issue revealed that Alapatt did not acquire the Notebooks in exchange for paying "back rent" supposedly owed by

DOOM or to prevent the Notebooks from being destroyed by the landlord of DOOM's Los Angeles studio.  The truth is that Alapatt simply convinced the landlord to sell him the Notebooks for $12,500, and the story that Alapatt has used all along to justify his possession of the Notebooks was entirely false. Indeed, Plaintiff now know that the Notebooks were procured by Alapatt's fraud.

9.      Beyond his theft and deception, the real travesty is that instead of doing the right thing by unconditionally returning the Notebooks to DOOM's family as they have repeatedly requested, Alapatt refuses to return them and instead demands that the Notebooks or copies thereof be donated to a university or government archive even if doing so is contrary to DOOM's and his family's wishes. Alapatt's demand begs the obvious question: who is Alapatt to decide that the Notebooks containing the personal and intellectual property of DOOM, the rights to which are Plaintiffs' alone, must be donated to an archive against the will of the deceased artist and his surviving family? ***Setting aside the fact that the Notebooks were stolen, Alapatt's arrogant paternalism and extreme tone-deafness in trying to dictate that the Notebooks be donated is astonishing***.

## II.

## PARTIES

10.      Plaintiff Thompson is the widow of the late DOOM and the mother of their five children together. Thompson is also a steadfast protector of DOOM's legacy and intellectual property and helps manage DOOM's estate.  MF Doom owned both the physical copies of the Notebooks and copyrights therein prior to his death, and certain of those rights passed to Thompson. Thompson is a Georgia resident.

11.      Plaintiff Gas Drawls owns and controls DOOM's creative business ventures and is the holder and manager of DOOM's intellectual property portfolio and is the owner of the copyrights contained in the Notebooks. Gas Drawls is a Georgia limited liability company.

**4**
**COMPLAINT**

12.     Defendant Alapatt is a long-time player in the independent hip-hop business, and the owner of Now Again Records.  Alapatt met DOOM when he was the general manager and A&R for Stones Throw Records.  Alapatt worked on curating the classic *Madvillainy* album by DOOM and Madlib that was released in 2004. Indeed, Alapatt has collaborated with numerous legendary musical artists, but those collaborations have routinely ended badly, with many of those artists ultimately claiming that Alapatt has exploited, deceived and stolen from them. The same is also true as it relates to Alapatt's relationship with DOOM. Alapatt stole the Notebooks.

13.     Does 1 through 50 are individuals and/or entities whose true names and capacities are currently not known to Plaintiffs. Does 1 through 50 are legally responsible and liable to Plaintiff to the extent of the liability of the named Defendants. Plaintiffs will seek leave of the Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does when such identities and capacities become known.

14.     At all times relevant herein, each of the Defendants was the agent, servant, employee, joint-venturer, partner and/or alter ego of each of the named Defendant herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, joint venture, partnership and/or alter ego. Each Defendant has rendered substantial assistance and encouragement to the other Defendants, acting in concert knowing that its conduct was wrongful and/or unlawful, and each Defendant has ratified and approved the acts of each of the remaining Defendants.

## IV.

## JURISDICTION AND VENUE

15.     Gas Drawls asserts claims under the Copyright Act, 17 U.S.C. § 101 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338 (Copyright Act). This Court also has subject matter

jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendants are citizens of different U.S. States and/or citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court also has supplemental jurisdiction over all of Plaintiffs' other claims pursuant to 28 U.S.C. § 1367.

16. Defendant Alapatt, and his company Now Again conduct business in the State of California, and Alapatt is therefore is subject to this Court's personal jurisdiction.  Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, and under § 1391(b)(3) because Alapatt is subject to personal jurisdiction in this judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

**V.**

**BACKGROUND FACTS COMMON TO ALL CLAIMS**

**A. THE NOTEBOOKS**

17. Plaintiffs hold the rights to the Notebooks, the contents of which represent the purest form of DOOM's intellectual property. Containing rap lyrics, notes, musings, rhymes from previously released and unreleased songs, drawings and ideation of all sorts, the 31 volume Notebooks are filled with DOOM's creative expression spanning his entire career:

**6**
**COMPLAINT**

DOOM stored the Notebooks in his studio in Los Angeles, where he assumed that they were secure.

18.     The Notebooks are registered as two compilations with the U.S. Copyright Office as U.S. Registration No. TXu 2-389-790 and U.S. Registration No. TXu 2-389-792. True and correct copies of U.S. Reg. No. TXu 2-389-790 and U.S. Reg. No. TXu 2-389-792 are attached hereto as Exhibits "A" and "B", respectively.

**B. ALAPATT TAKES ADVANTAGE OF DOOM'S ABSENCE FROM LOS ANGELES TO OBTAIN THE NOTEBOOKS FROM DOOM'S STUDIO LANDLORD**

19.     In or about 2010, DOOM was unable to return to the United States after concluding a European tour due to an immigration issue.  DOOM subsequently relocated to the United Kingdom.

20.     In 2016, DOOM learned that the Notebooks were missing. When DOOM first asked Alapatt about his knowledge of the location of the Notebooks, Alapatt deflected and duplicitously behaved as though did not have them, even though he had, in fact, obtained them from the landlord of DOOM's Los Angeles studio. Indeed, Alapatt hid from DOOM the fact that he possessed the Notebooks. Even though he had the Notebooks, Alapatt told DOOM: ***"I have no idea where [the studio landlord is] … as I told [Thompson] when she contacted me …  [the studio landlord disappeared when his family sold the building which, from what***

*I understand, has been gutted … I know from working with [the studio landlord] that they carted away dumpsters full of stuff …"*



21.     Eventually, the studio landlord told DOOM that Alapatt had taken possession of the Notebooks. When DOOM confronted Alapatt about this, Alapatt told DOOM that he had the Notebooks because the studio landlord was supposedly going to destroy all of DOOM's possessions in the studio due to purportedly "past due rent" in the amount of $12,500. Alapatt's story was that he paid the $12,500 in "back rent" and was therefore able to "save" the Notebooks from destruction by

**8**
**COMPLAINT**

the studio landlord. DOOM and Plaintiffs were never able to verify Alapatt's account of how he came to possess the Notebooks with the studio landlord, but the story Alapatt told them dissuaded them from taking legal action to reclaim the Notebooks.

22.     When DOOM asked Alapatt to return the Notebooks, Alapatt refused. Alapatt has admitted that the intellectual property inside the Notebooks is DOOM's, but insists that because he paid the "back rent" to the studio landlord when the landlord had the right to and intended to destroy the Notebooks, the physical Notebooks themselves were legally his property.

23.     Sometime in the summer of 2020, in lieu of returning the actual Notebooks, Alapatt offered to make copies of the contents of the Notebooks, allegedly for the "sole purpose" of providing the copies to DOOM, but insisted on keeping the physical Notebooks. DOOM declined Alapatt's offer.

## C. ALAPATT PROVIDES A HARD DRIVE CONTAINING COPIES OF THE NOTEBOOKS AND DOOM TRAGICALLY PASSES AWAY

24.     In or about late October 2020, Plaintiffs reviewed a hard drive sent by Alapatt ostensibly containing copies of the Notebooks. The drive contained 33 large format scans of the Notebooks, copies of 31 of the Notebooks were in the file, with two duplicates.  Due to the date stamps on the digital files on the drive, Plaintiffs discovered that Alapatt had made these digital copies of the Notebooks without DOOM's approval or authorization at some point between 2018 and March 2020.  This means that Alapatt copied the Notebooks long before he offered earlier in the summer of 2020 to make copies supposedly for the "sole purpose" of providing them to DOOM. Upon information and belief, even after late October 2020, Alapatt has continued to make unauthorized copies of and/or distribute the Notebooks.

25.     Further, upon information and belief, since late October 2020, Alapatt has been in discussions with potential purchasers and/or acquirers of the

**9**
**COMPLAINT**

Notebooks or copies of the Notebooks, as well as other interested parties, such as certain hip-hop archives, leading to the additional copying, distribution and additional and further infringement and violation of Plaintiffs' exclusive rights.

26.    Later that October, DOOM passed away in the United Kingdom.

## D. NOTWITHSTANDING DOOM'S DEATH, ALAPATT MAKES IT CLEAR TO PLAINTIFFS THAT HE DOES NOT INTEND TO RETURN THE NOTEBOOKS TO DOOM'S FAMILY

27.    Of course, MF Doom owned both the physical copies of the Notebooks and all copyrights contained therein (either personally or through Gas Drawls) prior to his death, with the copyrights having been assigned to Gas Drawls and with the right to the physical Notebooks passing to Thompson after his death.

28.    After DOOM's passing, Plaintiffs hoped that Alapatt would finally return the Notebooks to DOOM's family, but those hopes were dashed, however, when Alapatt again refused Plaintiffs' requests that he do so. Shockingly, Alapatt told Plaintiffs that he would only return the Notebooks if they, or scans thereof, were donated to a museum or other institution of his choosing, ignoring the numerous objections to his doing so raised by Plaintiffs, DOOM's other family and friends and despite significant public outcry.

## E. IN MARCH 2023, ALAPATT'S LAWYER KENNETH FREUNDLICH TRIES TO CHILL PLAINTIFF'S FREE SPEECH RIGHTS WHEN THEY PUBLICLY DEMAND THE RETURN OF THE NOTEBOOKS

29.    In March 2023, Plaintiffs posted emails between DOOM and Alapatt and Thompson and Alapatt related to the Notebooks on the social media platform Instagram with the statement "Egon, Give the Notebooks Back":





In response to Plaintiffs' Instagram post, Alapatt's counsel wrote a "Cease and Desist" letter to Thompson's counsel

**FREUNDLICH LAW**
16133 Ventura Blvd. Ste. 645
Encino, CA 91436
P: 818.377.3790 / F: 310.275.5351
www.freundlichlaw.com

KENNETH D. FREUNDLICH
ken@freundlichlaw.com

March 1, 2023

**BY EMAIL ONLY**
mcooley@ftllp.com

Miles M. Cooley, Esq.
Freedman + Taitelman, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067

RE: *Eothen Alapatt -w- MF Doom ESTATE*

Dear Mr. Cooley:

It has come to my attention that your client has reposted emails from August 2016 on Instagram (from "Karlo Metal Franks" to my client), entirely out of context, with an inciting demand for "Egon" to "Give the Notebooks Back". The name "H" is purposely redacted. Not only do these posts contain injurious falsehoods constituting defamation *per se*—which have in turn engendered thousands of negative posts about my client—they have also placed my client in personal danger.

Demand is made for all of this public accusing to cease and desist forthwith.

All rights reserved.

*Kenneth D. Freundlich*

KENNETH D. FREUNDLICH

Alapatt's lawyer's letter was a clear attempt to intimidate Plaintiffs from exercising their right to free speech regarding the Notebooks and their frustration that Alapatt refuses to return them to DOOM's family. ***However, Plaintiffs will not be intimidated, as evidenced by the instant lawsuit.***

**F.  PLAINTIFFS LEARN THAT ALAPATT'S STORY ABOUT HOW HE OBTAINED THE NOTEBOOKS WAS A LIE**

30.  In or about May 2023, Plaintiffs uncovered evidence that Alapatt has largely made up his version of events related to the acquisition of the Notebooks and that such acquisition was, in fact, fraudulent. A third-party witness with

personal knowledge of the events at issue revealed that Alapatt's "back rent" story, which he used to justify his possession of the Notebooks in the first place, was entirely concocted by Alapatt. In fact, DOOM's landlord was never going to destroy the Notebooks and Alapatt did not acquire them in exchange for paying "back rent" supposedly owed by DOOM or to prevent the Notebooks from being destroyed by DOOM's studio landlord. The truth is that Alapatt simply convinced DOOM's landlord to sell him the Notebooks for $12,500, and the story that Alapatt concocted to justify his possession of the Notebooks and to dissuade DOOM from suing him to get the Notebooks back was false.

31. Given the foregoing facts, and setting aside the fact that Alapatt stole the physical Notebooks, which are Thompson's property, Gas Drawls also has a legitimate prima facie copyright infringement claim due to Alapatt's unauthorized copying of the Notebooks, the fact of which Plaintiffs discovered in October 2020. "A prima facie case of copyright infringement by reproduction is established by showing ownership by the plaintiff and copying by the defendant." *Mattell, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 799 (9th Cir. 2003). Copyright infringement occurs when a person or entity exercises any of the owner's exclusive rights in a creative work without authorization or other legal defense. 17 U.S.C.A. §§ 501, 106. Alapatt had no legal right to copy the contents of the Notebooks, which contents are the intellectual property of Gas Drawls, as they were Thompson's and DOOM's before.  Indeed, Alapatt, through his counsel, has admitted that DOOM's estate has intellectual property rights to the contents of the Notebooks" and Alapatt has also admitted to making digital copies of the Notebooks and, in fact, sent copies of those copies to Plaintiffs. "Unauthorized reproduction is the illegal duplication of a work by making tangible copies …" *See* 17 U.S.C.A. § 106. Again, none of these copies were authorized by DOOM, Plaintiffs or anyone else, at any time. Upon information and belief, even after late October 2020, Alapatt has continued to make unauthorized copies of and/or

distribute the Notebooks. Further, upon information and belief, since late October 2020, Alapatt has been in discussions with potential purchasers and/or acquirers of the Notebooks or copies of the Notebooks, as well as other interested parties, such as certain hip-hop archives, leading to the additional copying, distribution and additional and further infringement and violation of Plaintiffs' exclusive rights.

32.     Moreover, it is indisputable that Alapatt had been making copies of the Notebooks as far back as 2018 (as evidenced in the date stamps of numerous of the digital files provided to Plaintiffs) or possibly even as early as when he unlawfully took possession of them in 2016, which was long before he ever provided copies of the copies of the Notebooks to Plaintiffs in late 2020, defeating any assertion by Alapatt that he made the same solely to transmit to Plaintiffs.

33.     Although Alapatt has professed that he "does not intend to publish" the unauthorized digital copies he made, he does not have to "publish" the copies of his infringing copies to be liable. Regardless, Plaintiffs are informed, believe and upon these bases allege that Alapatt actually shared the copies of the copies of the Notebooks he made with others. Gas Drawls therefore seeks an injunction requiring the return of the physical Notebooks, the destruction of any unlawful copies thereof in his possession or in the possession of third parties and from any further reproduction or publication of the intellectual property contained in the Notebooks.  Alapatt's illegal reproduction of the Notebooks has severely damaged Gas Drawls, entitling it the return of the Notebooks and significant compensation.

34.     In addition to his liability to Gas Drawls for copyright infringement, Alapatt is also liable to Plaintiffs for his conversion of the physical Notebooks, which were DOOM's and now Plaintiffs' personal property, for fraudulently misrepresenting the illicit auspices pursuant to which he obtained the Notebooks, i.e., lying that he had "purchased" the Notebooks in exchange for paying "back rent" supposedly owed by DOOM in order to prevent DOOM's studio landlord from destroying the Notebooks, when the truth is that Alapatt simply convinced

DOOM's landlord to sell him the Notebooks for $12,500 and he has therefore cynically held the Notebooks hostage for years based on his recently discovered fraudulent misrepresentations.

## VI.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT

**(Direct Copyright Infringement Under 17 U.S.C. § 501, brought by Gas Drawls against Alapatt)**

35.     Gas Drawls repeats and incorporate by reference the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

36.     The Notebooks are original textual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. The Notebooks are registered as two compilations with the U.S. Copyright Office as U.S. Registration No. TXu 2-389-790 and U.S. Registration No.  TXu 2-389-792.

37.     Pursuant to 17 U.S.C. § 106, Gas Drawls holds the rights to: (a) reproduce the Notebooks, (b) prepare derivative works based on the Notebooks, and (c) distribute the Notebooks in the United States and elsewhere.

38.     As alleged herein, Alapatt has unlawfully reproduced, by making large format copies, and distributed the Notebooks in violation of the rights of Gas Drawls under 17 U.S.C. § 106.

39.     Gas Drawls, the owner of the copyrights, did not and has not authorized Alapatt to reproduce the Notebooks.

40.     Alapatt is directly infringing the copyrights of Gas Drawls in violation of 17 U.S.C. § 501. Each infringement of the rights of Gas Drawls in each textual work constitutes a separate and distinct act of copyright infringement. Alapatt willfully copied, distributed, and otherwise infringed on the intellectual property interests of Gas Drawls.

41.     Alapatt's acts of infringement were willful, intentional, malicious and purposeful, in disregard of and with indifference to the rights of Gas Drawls.

42.     As a result of Alapatt's acts and conduct, Gas Drawls has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.

43.     In accordance with 17 U.S.C. §§ 504 and 505, Gas Drawls is entitled to its actual damages, including enhanced damages for willful infringement and attorney's fees.

44.     Unless enjoined by the Court, pursuant to 17 U.S.C. § 502, Alapatt will continue to engage in acts causing substantial and irreparable injury to Gas Drawls that includes Alapatt willfully depriving it of the use, enjoyment and exploitation of the Notebooks and resultant damage to their reputation, goodwill for which there is no adequate remedy at law.

### SECOND CAUSE OF ACTION
### FRAUD/INTENTIONAL MISREPRESENTATION
**(brought by Plaintiffs against Alapatt)**

45.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

46.     In 2017, when DOOM's studio landlord told DOOM that Alapatt had the Notebooks and DOOM confronted Alapatt, Alapatt told DOOM that he had the Notebooks because the studio landlord was supposedly going to destroy all of DOOM's possessions in the studio due to purportedly "past due rent" in the amount of $12,500. Alapatt's told DOOM that he paid the $12,500 in "back rent" and was therefore able to "save" the Notebooks from destruction by the studio landlord.

47.     In May 2023, Plaintiff's learned that Alapatt lied about the events related to the acquisition of the Notebooks and that such acquisition was, in fact, fraudulent. A third-party witness with personal knowledge of the events at issue

revealed that Alapatt's "back rent" story, which he used to justify his possession of the Notebooks in the first place, was entirely concocted by Alapatt. In fact, DOOM's landlord was never going to destroy the Notebooks and Alapatt did not acquire them in exchange for paying "back rent" supposedly owed by DOOM or to prevent the Notebooks from being destroyed by DOOM's studio landlord. The third-party witness informed Plaintiffs that, in fact, Alapatt convinced DOOM's landlord to sell him the Notebooks for $12,500, and the story that Alapatt concocted to justify his possession of the Notebooks was false. Alapatt made the false representations in an attempt to usurp DOOM's and now Plaintiffs' ownership and rights to the Notebooks.

48.     At the time of Alapatt's intentional misrepresentations, DOOM and Plaintiffs were ignorant of the falsity of the representation and could not, in the exercise of reasonable diligence, have discovered the falsity of such representations. Moreover, DOOM and Plaintiffs were dissuaded from pursuing legal action against Alapatt based upon his misrepresentations.

49.     As a direct and proximate result of Alapatt's fraudulent conduct, DOOM was and Plaintiffs are now deprived of the Notebooks and have therefore suffered damages and will continue to suffer damages according to proof at trial.

50.     The aforementioned conduct of Alapatt, was intentional and done to deprive DOOM and now Plaintiffs of property and/or legal rights or otherwise causing injury, i.e., the dispossession of the Notebooks, and was despicable conduct that subjected DOOM and now Plaintiffs to a cruel and unjust hardship in conscious disregard of DOOM's and now Plaintiffs' rights, to justify an award of exemplary and punitive damages.

## THIRD CAUSE OF ACTION

## CONVERSION

### (brought by Thompson against Alapatt)

51.     Plaintiffs repeat and incorporates by reference the allegations in

---

**17**
**COMPLAINT**

Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

52.     Alapatt stole and exercised unauthorized dominion over the Notebooks, which were DOOM's, and now are Thompson's, personal property.

53.     The Notebooks were unlawfully taken from DOOM's Los Angeles while DOOM was in the United Kingdom.

54.     As alleged herein, Alapatt procured the Notebooks through fraudulent misrepresentation.

55.     Alapatt stole and converted the Notebooks for his own benefit, without authorization from DOOM or Thompson.

56.     Alapatt's unauthorized actions were in direct interference with Thompson's legal title and superior right of possession in and to the Notebooks.

57.     Alapatt converted the Notebooks, which were DOOM's and now Thompson's personal property for his own benefit, and to the detriment of Plaintiffs.

58.     Alapatt has retained the benefits from his conversion of the Notebooks, and equity requires that compensation be paid to Thompson for the aforementioned theft, copying and use of the Notebooks.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (brought by Plaintiffs against Alapatt)

59.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

60.     Alapatt stole the Notebooks, property belonging to DOOM and now Plaintiffs, and have reaped a substantial monetary benefit, without compensating Plaintiffs therefor.

61.     Alapatt has been, and continues to be, unjustly enriched, and there exists an obligation implied by law to do justice even though no express promise between Alapatt and Plaintiffs require compensation for the aforementioned

possession and use of the Notebooks.

### FIFTH CAUSE OF ACTION
### CONSTRUCTIVE TRUST
**(brought by Plaintiffs against Alapatt)**

62.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

63.     As set forth above, Plaintiffs' ownership and rights in the Notebooks have been wrongfully diverted as a result of Alapatt's fraudulent conduct set forth herein with regards thereto, Alapatt's retention of the Notebooks is wrongful and without basis.

64.     Based on the allegations set forth herein and that under California law, one who wrongfully obtains a thing is an involuntary trustee thereof, for the benefit of the owners and/or assignees and/or licensees (Plaintiffs). One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the person who would have otherwise had it.

65.     An equitable constructive trust may be imposed to prevent unjust enrichment where something has been wrongfully acquired or detained. Plaintiffs have a right to the ownership and rights of the Notebooks, and Alapatt does not. As alleged herein, Alapatt engaged in the fraudulent actions.

66.     Plaintiffs and DOOM before them never consented to Alapatt's wrongful and unlawful possession of the Notebooks resulting from the fraudulent actions alleged herein.

67.     As a result of the facts stated herein, Alapatt holds whatever ownership, rights, profits, money, interest or claimed interest in the Notebooks and

assets solely for the benefit of Plaintiffs, as constructive trustees.

68. As a result of Alapatt's fraudulent conduct as set forth herein, Plaintiffs are entitled to the ownership and rights of the Notebooks that were fraudulently obtained by Alapatt. However, Alapatt has failed and refused and continues to fail and refuse to convey the Notebooks to Plaintiffs, to the detriment of Plaintiffs. At all times herein mentioned, Plaintiffs were unaware, and could not have discovered in the exercise of reasonable diligence, that Alapatt intended to commit acts of fraud as set forth herein.

69. The facts and equities of this case mandate that a constructive trust be created and that Alapatt release all claims and/or claimed interests in ownership and rights in the Notebooks, as well as the profits, past and future, received therefrom.

70. As a proximate result of the intentional conduct by the Alapatt as alleged herein, Plaintiffs have been damaged generally and specially in a sum according to proof, including interest thereon at the legal rate.

71. The acts of fraud by Alapatt, as described herein, were done willfully, fraudulently, maliciously, oppressively, with conscious disregard of the rights of, and with the intent to injure and deceive DOOM and now Plaintiffs of property and legal rights, thus entitling them to recover exemplary damages under California Civil Code section 3294 in amounts sufficiently punish Alapatt and set an example.

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

### (brought by Plaintiffs against Alapatt)

72. Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

73. An actual controversy has arisen and now exists between Plaintiffs and Alapatt.

74. As described above, Plaintiffs contend that they alone own the

copyright for the Notebooks and that Alapatt has stolen the Notebooks and infringed that copyright by making physical copies of the Notebooks in violation of Plaintiffs' rights.

75.   Plaintiffs further contend that Alapatt committed fraud when he intentionally misrepresented the true facts to DOOM and Plaintiffs about how he came to acquire the Notebooks in an effort to ensure that he could continue to unlawfully keep the Notebooks.

76.   Plaintiffs now seek a declaratory judgment from this Court that the Notebooks are lawfully the property of Plaintiffs and not Alapatt's.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in his favor against Alapatt, as follows:

A.   For a declaration and judgment that Alapatt has infringed the Copyright interests of Gas Drawls in the Notebooks in violation of 17 U.S.C. sec 101, et seq.;

B.   For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Alapatt, and any of his agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order:

1. from directly or indirectly infringing in any manner any of the rights of Gas Drawls under the Copyright Act, whether now in existence or hereafter created, without limitation;

2. from causing, contributing to, inducing enabling, facilitating and/or participating in the infringement of the copyright interests of Gas Drawls, without limitation; and

3. from copying, displaying, or marketing or distributing the Notebooks and/or derivative versions thereof.

C.   For a grant of permanent injunctive relief under 17 U.S.C. § 502

compelling Alapatt, and any of his agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order to return the physical Notebooks to Gas Drawls.

D.     For infringement of the Notebooks, the actual damages and the profits of Gas Drawls that are attributable to the violations alleged herein of the Notebooks pursuant to 17 U.S.C. § 504(b).

E.     For the attorneys' fees and costs of Gas Drawls under 17 U.S.C. § 505.

F.     For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

G.     For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

H.     An award to Plaintiffs of the amount of Alapatt's fraud and unjust enrichment;

I.     For an accounting, the imposition of a constructive trust, restitution of Alapatt's profits and damages according to proof;

J.     An award to Plaintiffs of the amount attributable to Alapatt's acts of conversion; and

K.     For such additional relief as the Court deems just and equitable.

Dated: October 24, 2023                    FREEDMAN + TAITELMAN, LLP


By: */s/ Miles M. Cooley*
 Miles M. Cooley, Esq.
 *Attorneys for Plaintiffs Jasmine Dumile*
 *Thompson and Gas Drawls, LLC*

Of Counsel:
Darius C. Gambino (*pro hac vice to be filed*)
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
T: 215-972-7173
darius.gambino@saul.com

## JURY DEMAND

**A JURY TRIAL IS HEREBY DEMANDED.** Pursuant to Fed R. Civ. Proc. 38 and U.S. Const. Amend. VII, Plaintiff hereby respectfully demands a trial by jury for all issues so triable in this action.

Dated: October 24, 2023                    FREEDMAN + TAITELMAN, LLP

By: */s/ Miles M. Cooley*
Miles M. Cooley, Esq.
*Attorneys for Plaintiffs Jasmine Dumile Thompson and Gas Drawls, LLC*